Paul LILLY, individually and on behalf
of all others similarly
situated, Plaintiffs,

and

Christopher McKinney et al.,
Plaintiff–Intervenors,

v.

HARRIS–TEETER SUPERMARKET, a
corporation, Defendant.

Richard GREGORY, individually and on
behalf of all others similarly
situated, Plaintiffs,

v.

HARRIS–TEETER, a corporation,
Defendant.

Edward PORTER, individually and on
behalf of all others similarly
situated, Plaintiffs,

v.

HARRIS–TEETER, a corporation,
Defendant.

Nos. C–C–76–191, C–C–79–130
and C–C–79–137.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Aug. 15, 1980.

Michael A. Sheely, Charlotte, N. C., for plaintiffs.

John O. Pollard, Blakeney, Alexander & Machen, Charlotte, N. C., for defendant.

## MEMORANDUM OF DECISION

McMILLAN, District Judge.

This case was tried at length starting on January 28, 1980, and after some interruptions was concluded on March 27, 1980. Argument on the facts was conducted on June 24, 1980. The case is now ready for decision.

Harris–Teeter Supermarkets, Inc., operates a central warehouse and bakery, a transportation system, and a number of supermarkets (grocery stores). Plaintiffs filed this suit on behalf of themselves and a class of employees with similar complaints, asserting that they were denied employment, denied promotion, or discharged from employment because of their race (black). A class consisting of such employees was constituted.

The principal issues are whether defendant has discriminated against black employees based on race. The court finds that during the pertinent periods, even though it may not have been a conscious policy of the defendant's higher management, there was a generalized pattern or practice of racial discrimination in hiring, promoting and discharging employees. The court also finds that a number of employees, approximately one–half of the plaintiffs and class members who testified, have been the specific objects of such discrimination, and that those persons are entitled to individual re-

lief in the form of back pay and other compensation.

The particular practices which effectuated discrimination against black employees are the following:

1. Jobs were not posted.

2. Written job descriptions were not available.

3. There was no written promotion system.

4. There were no written promotion criteria.

5. There was no requirement nor suggestion that an employee ask for a particular job in order to be considered for it.

6. There were no written job evaluations for warehouse workers.

7. No written list was maintained of employees wanting to change to other or better jobs; only a "mental" list was kept by foremen and supervisors of persons who may have shown interest in a particular job.

8. Requirements for "lead" jobs included the following:

   (a) Correct "attitude";

   (b) Initiative; an employee must not only excel in his job but *say* he wanted to get ahead (this requirement of "speaking up" was never publicized).

9. Promotions were available only within the same shift (with exceptions for various whites).

10. Promotions were available only within the same department (with exceptions for various whites).

11. Refusals by blacks to take jobs on particular occasions, regardless of circumstances, were carefully remembered, but such blacks were never asked whether they had changed their minds.

12. Previous job experience was not systematically recorded. Relevant job experience of blacks not noted on the application form was deemed not to exist; however, word of mouth information about the job experience of whites was remembered.

As usual, statisticians testified on both sides of the case. Statisticians for the plaintiffs selected data and made comparisons which generally support the plaintiffs' contentions, and statisticians for the defendant testified generally about other figures and opinions which support the position of the defendant. To a tremendous extent the opinions were determined by the choices of samples and the elements of the labor market and the employer's work force which were compared with each other. The statistical evidence generally shows about what the raw data shows–that blacks had less chance of getting good jobs than whites and less chance of getting promotions than whites.

With this brief background it now becomes necessary to decide what part, if any, race played in the initial employment, in the on–the–job treatment, in the promotion or demotion, and in the discharge of the various named plaintiffs and class members.

I find that the defendant did discriminate on account of race against the following named plaintiffs:

*Edward Porter.*–Edward Porter in March of 1975 applied for a job as truck driver. He was qualified for the job. Whites were hired during the pertinent period following his application. He was not considered for the job and was not hired because of his race.

*Philip Reid.*–Philip Reid applied in April of 1976 for a job as a produce manager. He was hired as a produce clerk but was never promoted to manager. White persons who were promoted ahead of him but were no better qualified were Andy Wilson and Warren Allen. He is entitled to compensation for being denied *promotion* to produce manager because of his race. His *discharge*, however, I do not find to be the result of racial discrimination.

*Paul Lilly.*–Paul Lilly was a meat checker and milk picker in the warehouse, on the second shift. He complained in January of 1975 about racial discrimination. Within forty–eight hours he was discharged by the supervisor, ostensibly for miscounting beef. Miscounting beef was not the reason for his

discharge; his discharge was on account of race.

*James Mobley.*–James Mobley, a lead man in the milk–dairy–meat departments, was denied several promotions which went to white employees (Terry Givens, Allison and Jeff Fowlkes), all of whom were junior to him. Although Mobley went on strike in the winter of 1976–77, he was available to work by February of 1977 and notified his employer of his availability and willingness at the times that the other three men were promoted.

*Jerome B. Gary.*–Jerome Gary, a fork lift operator and stocker with two years of work as an automobile mechanic and auto body worker, was denied opportunity because of his race to transfer to a mechanic's job. Two white employees (Burris and Richards) were allowed to transfer. Gary was also for the same reason denied transfer to a "sit down" lift truck operation although white employees were allowed to make that transfer.

*Richard Gregory.*–Richard Gregory came to Harris–Teeter in May of 1973 with nine years' experience in supermarket operations in all functions except selling. He was made grocery manager in the spring of 1974. He attempted to discharge his white stock clerk who "refused to work for a nigger"; his store manager immediately reinstated the white clerk. In January of 1975, several months later, Gregory was demoted and sent to a different store, ostensibly for failing to keep the stock room clean. The demotion was formally conducted by James Crowell, the black assistant manager of the store, but it was carried out under the watchful eye of the white territory manager. Race rather than quality or cleanliness of work was the reason for the demotion.

*Christopher McKinney.*–This plaintiff started to work June 18, 1975, in the Harris–Teeter warehouse as a lift truck operator, and his duties have not changed since that time. He had previous experience as a line foreman, supervising several machine operators. He sought promotion to lead man or foreman but the jobs were given to Guy Fowlkes and to Weaver. Fowlkes, though not formally appointed lead man, was given the duties of a lead man in the fall of 1976 before the 1976–77 strike and was made a management trainee and foreman in 1977. Weaver was hired during the strike and was junior to McKinney in experience and qualifications. McKinney was denied the jobs because of his race.

*Roy Torrence.*–Torrence, hired in 1974, had owned and supervised a restaurant for eight or nine years. He was qualified for promotion to lead man or foreman. He had supervised a number of employees in a previous job. A white employee (Mitchell) was trained by him and was then promoted over him. A white employee (Hanson), junior to him and no better qualified, was promoted over him. He was denied promotion because of his race.

*Roosevelt Patterson.*–Patterson worked for Harris–Teeter during large parts of 1972 and 1973 and since October 1973 has worked continuously for Harris–Teeter. Since March of 1974 he has been a lift driver on the day shift. He wanted to become receiver and in fact worked the job full time for a week or more, but was not paid a receiver's wages. Numerous whites junior to him were promoted over him. These included David Allison, Jeff Fowlkes and Terry Givens. Patterson was denied promotion because of his race.

*Curtis Jones.*–Jones has been a salvage worker since July 1974. He sought the job of rail dock worker from his supervisors, Dick Jackson and John Watson. Several whites, James Lamb, Eddie Kistler and Neal Mitchell, all junior to him, were hired into that job ahead of him. He was denied promotion because of his race.

*John Thomas Johnson.*–Johnson was employed in February of 1975 as a picker and lift operator in first meat and then produce. He was qualified and available for the lead job and foreman's job to which Fowlkes was promoted in 1977 and was denied consideration for those jobs because of his race. [Johnson's claims are clouded somewhat by the fact that his wages have gone up considerably (his present wage is $6.30 an hour)

and by the fact that in April of 1977 he was offered a job as "selector" at $4.80 which he turned down for temporary domestic reasons to stay in sanitation at $3.90 an hour. Those family problems were resolved in a short time but he did not tell the employer and the employer did not inquire whether the problems still existed.]

*Frank Sullivan.*–Sullivan has been with Harris–Teeter for eleven years as collector and receiver. In July 1973 he became a *de facto* lead man. He did the job but was not given the pay raises which other lead men received. Mitchell, his supervisor, had made a public announcement to the day shift of the whole department of his promotion to lead man, but repudiated it the following spring. Sullivan was qualified to be lead man and was, in fact, a lead man for several months. George Hamilton and David Kiker were both junior to him but were promoted to lead men ahead of him. The reason given for depriving Sullivan of his *de facto* lead man job and pay was that two years earlier, immediately after he had gotten married, the employer had put him in a night program as foreman trainee and he had asked out of it because he had just gotten married. I do not find that two–year–old piece of history to be a valid reason for denying him promotion. He was denied promotion because of race.

*Kenneth Joe Bailey.*–Bailey is the chief steward on the day shift and a manager of the union negotiating committee. He started as a loader's helper in 1974, became a loader, and since April 27, 1974, has been a "stacker." He has three years of college. He filed grievances in connection with promotions to lead men of Richard McLain and Wade Carpenter, alleging racial discrimination. Bailey was qualified for the lead job Carpenter got and was senior to him. Participation in the strike was not fatal to the promotion of Carpenter (white). Bailey was denied promotion because of race.

*John Wallace LeGrand.*–LeGrand started work for Harris–Teeter in July 1974 as a picker in frozen foods. He was instructed to learn the job of an employee named Black so he could be a fill–in lead man and

he became a fill–in lead man. He had had previous experience as a lead man and had told the manager about it when he came to work. He trained a white person named Avery to be lead man. The job was offered to Avery but was not offered to LeGrand. LeGrand, because of his race, was not considered for lead man jobs which were awarded to Douglas Dover, Terry Givens and Jeff Fowlkes.

From the evidence I do not find any discrimination based on race which gives rise to any claim or right of action on behalf of the following employees:

Hazel Fisher

Shirley Gatewood

Mack Ervin

William Carrothers

Barbara Anderson

Austin Pharr

Tresvant Goodwin

Woodrow McManus

Therrell McMoore

Richard Burch

Counsel for the plaintiffs are requested to provide the court with proposed specific findings of fact, conclusions of law and orders with reference to history, pattern and practice of discrimination, and with reference to those persons who, as indicated above, have been found entitled to relief based upon racial discrimination.

Counsel for the defendants are requested to provide the court with proposed findings of fact, conclusions of law and orders with respect to those persons who, as indicated above, have been found *not* entitled to relief based upon racial discrimination.